Filed 1/13/16  Melrose Quality Pain Relief v. City of Los Angeles CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MELROSE QUALITY PAIN RELIEF et al., | B257789 |
| Plaintiffs and Appellants,<br>v. | (Los Angeles County<br>Super. Ct. No. BC440036) |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.
Amy Hogue, Judge.  Affirmed.

Law Offices of Stanley H. Kimmel and Stanley H. Kimmel for Plaintiffs and
Appellants.

Michael N. Feuer, City Attorney, Carlos de la Guerra and Jess J. Gonzalez,
Assistant City Attorneys and Steven N. Blau, Deputy City Attorney, for Defendants and
Respondents.

_____

This is the second of two related appeals challenging the medical marijuana ordinances in the City of Los Angeles (the City). In the first case, *Safe Life Caregivers v. City of Los Angeles* (_____, 2015, B257809) ___ Cal.App.4th ___ (*Safe Life*), we considered, and rejected, numerous challenges to the City's current medical marijuana ordinance, Proposition D (Prop D). In the current case, the appellants – a single medical marijuana collective and five affiliated individuals – challenge the enactment and enforcement of Prop D as well as a search of the collective and related arrests. Due to overlap in the arguments raised by appellants in both cases, the cases were consolidated for the purposes of oral argument only. Although we resolve the cases in separate opinions, our resolution of many issues in the *Safe Life* appeal applies equally to this case. Accordingly we cite freely to our opinion in *Safe Life*.

The medical marijuana dispensary appellant in this case is Melrose Quality Pain Relief, Inc. (Melrose).[1] The individual appellants are the two co-owners of Melrose, Abdul Ala Ahmed and Robina Bashir; and three members of the collective who were present at the time of the police search, Manuel Kebabjian, Hovannes Kebabjian, and Astkhik Panadzhyan. The respondents are the City and a lengthy list of City officers and employees, sued in their official and/or individual capacities, including the current mayor, the current and former city attorney, various attorneys in the city attorney's office, other city officials and approximately ten members of the Los Angeles Police Department (LAPD). Appellants allege the LAPD and several city attorney respondents are responsible for the search of Melrose, and the detention and/or arrest of several of the individual appellants. Appellants allege that the remaining non-LAPD individual

---

[1] In this opinion, we use the terms "dispensary" and "collective" interchangeably. There are two reasons for this. First, in *Safe Life*, we rejected the argument that the City's use of the two different terms related to different types of medical marijuana businesses. (*Safe Life*, at p. 25.) Second, in appellants' complaint, they assert that the appellant entity is a "dispensing collective."

respondents are responsible, in one way or another, for the enactment and enforcement of the City's medical marijuana ordinances.[2]

The trial court sustained respondents' demurrers to appellants' complaint, with leave to amend a single cause of action, the tenth. Appellants declined to amend. On appeal, appellants argue that the tenth cause of action sufficiently stated a cause of action and no amendment was necessary. As to nearly every other cause of action, however, appellants argue that they should be granted leave to amend to allege what amounts to a completely different cause of action. We reject all of appellants' arguments and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

To properly understand the arguments appellants make on appeal – and how those arguments differ from the causes of action alleged in the complaint – a general understanding of the history of medical marijuana laws in California, and ordinances in the City, is necessary. We assume familiarity with the discussion of these statutes and ordinances found on pages 3 to 8 of our slip opinion in *Safe Life*.

1.  *Original Complaint*

Appellants' original complaint was filed on June 21, 2010. By this time, the City had made its first two attempts to regulate marijuana dispensaries: the Interim Control Ordinance and the Grandfather Prior Registrant Ordinance. Appellants had previously attempted to register Melrose under the Interim Control Ordinance, but the City did not consider Melrose to be properly registered.[3] Indeed, on May 4, 2010, the City sent a

---

[2]     Appellants' allegations against these respondents rise and fall with their challenges to the merits of Prop D.

[3]     This is an oversimplification of a rather complicated factual scenario. This much is clear: On the last day of registration, November 13, 2007, the collective's prior owner filed some documents in Melrose's name. The City accepted the filing *conditionally* pending action by the City to review the documents and determine whether registration was complete. A few days later, counsel for Melrose wrote the City stating, "it appears

3

form letter to Melrose indicating that the Grandfather Prior Registrant Ordinance would become operative on June 7, 2010, and stating that, as Melrose had not registered under the Interim Control Ordinance, it "must therefore immediately cease its operations." (The May 2010 Shutdown Letter.) On June 6, 2010, Melrose shut down indefinitely.

Melrose's complaint stated nine causes of action seeking declaratory or injunctive relief relating to the two ordinances and the City's refusal to consider Melrose as grandfathered due to its apparently insufficient registration. Melrose was not the only collective to challenge the Grandfather Prior Registrant Ordinance; collectives in this and other related cases sought a preliminary injunction against the ordinance.[4]

### 2. *Melrose Reopens*

A hearing was held on July 8, 2010, apparently on Melrose's ex parte application for a temporary restraining order to prevent enforcement of the ordinance, prior to the upcoming hearing on the preliminary injunction. At the hearing, the trial court questioned if there might be some "informal basis" by which the City would agree not to shut down dispensaries "assuming that they're not the recipient of complaints and assuming that they are not in violation of any law other than arguably" the Grandfather Prior Registrant Ordinance. The court wanted both sides "to try to come to some sort of

---

as though additional documentation is necessary to complete your registration process," and promising the necessary documents shortly. In December 2008, Melrose filed a hardship application with the City Council, to receive an exemption from the Interim Control Ordinance. In July 2009, Melrose submitted further documents in connection with its exemption application. As of September 10, 2009, it appears that the hardship application was still pending. On September 12, 2009, appellants Ahmed and Bashir purchased Melrose. The record does not indicate the ultimate disposition of Melrose's hardship application. In light of the arguments made by appellants here and in the trial court, we assume the hardship application was not approved. Nothing in the record suggests that Melrose ever challenged the failure to grant it a hardship exemption by petition for administrative mandate or otherwise. We treat Melrose as unregistered under both the Interim Control Ordinance and the Grandfather Prior Registrant Ordinance.

[4] The collectives in the related cases are the appellants in *Safe Life*.

4

an understanding" on the issue.  Although the court suggested that if dispensaries were subject to police raids solely because of violation of the Grandfather Prior Registrant Ordinance, the court would "certainly look very seriously at that," the court also stated that it was not indicating in advance how it would rule if the issue formally came before it.  The court hoped that the parties would come to "some sort of accommodation" to deal with the period prior to its ruling on the motion for preliminary injunction.  The City showed little interest, stating its belief that "the vast majority of plaintiff dispensaries in this litigation should be closed," as they are in violation of the ordinance.  The court made no orders, and the parties reached no accord.

Although there had been no agreement to refrain from enforcement, nor any court order, appellants apparently took solace in the court's comments and reopened Melrose the very next day.

3.      *The Raid on Melrose*

The City took a somewhat different view.  On the morning of the July 8 hearing, Deputy City Attorney Colleen Courtney (who is not a defendant in this case) wrote an e-mail to respondents Assistant City Attorney Asha Greenberg and Deputy City Attorney Mary Claire Molidor, stating, "we need your and LAPD's help."  Deputy City Attorney Courtney stated, "If possible, we would like to secure a LAPD declaration by 7/15 to support the City's claim of unclean hands in the Melrose matter, i.e., that the site is still doing business, that the daily operations are illegal (illegal sales, transport, etc.)."  She also stated that "Jane" (unidentified) had received a complaint from a community member regarding Melrose, stating that they have large illegal signs, a row of "fire hazard bootleg sheds," and "did a great business all weekend."  Deputy City Attorney Greenberg agreed that "we have received those complaints also about this location."  She suggested that Deputy City Attorney Molidor "talk to LAPD about enforcement at this location.  It is definitely one of our complained of locations."  Deputy City Attorney Molidor did so, inquiring if LAPD's enforcement could be scheduled by July 14.

5

On July 12, Deputy City Attorney Molidor sent an e-mail to LAPD Lieutenant John King, saying that based on community complaints, "we have prioritized" Melrose for enforcement. The e-mail stated, "I assume that LAPD will follow its protocol utilized at other [dispensaries] which have been the subject of enforcement – in other words, undercover buys followed by a search warrant based on the [probable cause] of illegal sales of [marijuana] in violation of [Health and Safety Code section 11360] and violations of [the City's Grandfather Prior Registrant Ordinance] which also prohibits the cultivation, distribution, possession, or giving away of [medical marijuana] without having complied with [the ordinance]."

The LAPD did exactly that. On July 20, 2010, at 3:15 p.m., LAPD Officers Jackson and Walden went to Melrose with fake IDs and physician recommendations for medical marijuana. They knocked on the front door and were let in by Hovannes Kebabjian. Hovannes Kebabjian asked if they were first time customers; they both said yes. They were asked for, and produced, identification and their physician recommendations. They were each given a three-page form to sign. The form indicated that they were joining Discount Patient Access Center as members. While they signed and initialed the necessary paperwork, Hovannes Kebabjian called the doctor's office listed on their recommendations to verify their authenticity. They were then individually taken into the back room, where they met Manuel Kebabjian. In the back room, they saw multiple jars containing marijuana, and were asked which strain they wanted. There was a dry erase board with the names of different types of marijuana with dollar amounts next to them "much like a menu with prices." When they asked about prices, Manuel Kebabjian told them that, as first time customers, they would each receive a 10 percent discount. They each purchased a small quantity of marijuana with cash.

After they left, Officer Jackson prepared a search warrant affidavit that set out the above facts. He formed the opinion that Melrose was not in compliance with the CUA and MMPA, and that, instead, Melrose was simply selling marijuana for money. He also concluded that Melrose was in violation of the Grandfather Prior Registrant Ordinance for not having registered. A search warrant issued just before 7:00 p.m.

6

The warrant was executed later that evening. The operative complaint does not provide detailed circumstances of the execution of the warrant. It states that police "searched and destroyed property at the premises [of Melrose] and arrested" appellants Abdul Ala Ahmed and Manuel Kebabjian.[5] The complaint further alleges that LAPD respondents "unlawfully detained, questioned, and arrested" appellants Hovannes Kebabjian and Panadzhyan, although Panadzhyan was not taken into custody.

Thereafter, Deputy City Attorney Courtney filed the declarations of two LAPD officers in opposition to Melrose's request for injunctive relief. A preliminary injunction was eventually granted against certain elements of the Grandfather Prior Registrant Ordinance in all of the related cases. In order to continue to regulate medical marijuana collectives while its appeal of the preliminary injunction was pending, the City enacted the Grandfather/Lottery Ordinance.

In January 2011, the City Attorney's office sent a letter to Melrose's landlord. The letter stated that illegal drug activity had occurred on the premises on July 20, 2010, and informed the landlord that the City Attorney was authorized to bring an eviction action if the property owner failed to evict any person who was using the premises for an illegal purpose related to a controlled substance (The January 2011 Landlord Letter).

4.    *A Series of Amended Complaints and Demurrers*

Appellants filed a first amended complaint, adding causes of action relating to the raid. Respondents demurred. There followed a series of amended complaints and demurrers – although it appears the first demurrer that proceeded to a full hearing was the one to the seventh amended complaint.

---

[5]    According to the City, criminal charges were filed against the arrested appellants. Charges were ultimately dismissed.

5.     *The Seventh Amended Complaint*

The seventh amended complaint was filed on August 22, 2013.  Many things had occurred in the interim.  The City's marijuana regulatory scheme had been replaced by Prop D, and Melrose had lost its lease and permanently closed in November 2012.

While the lengthy "common factual allegations" section of the operative complaint briefly acknowledged the enactment of Prop D, the actual causes of action were not framed in the context of either the new law or Melrose having ceased operations.  Instead, appellants' operative complaint still sought declaratory and injunctive relief against the operation of the Interim Control Ordinance and the Grandfather Prior Registrant Ordinance, with no mention of then-effective Prop D.  The seventh amended complaint alleged causes of action for:

First Cause of Action:  declaratory and injunctive relief that the Interim Control Ordinance expired on September 15, 2007;

Second Cause of Action:  declaratory and injunctive relief that the Grandfather Prior Registrant Ordinance is of no force and effect;

Third Cause of Action: declaratory and injunctive relief that the Interim Control Ordinance is unconstitutionally vague, uncertain, unreasonable, discriminatory, and overbroad;

Fourth Cause of Action:  declaratory and injunctive relief that the Grandfather Prior Registrant Ordinance is unconstitutionally vague, uncertain, unreasonable, discriminatory, and overbroad;

Fifth Cause of Action:  declaratory and injunctive relief to prevent the immediate closure of Melrose;

Sixth Cause of Action:  declaratory and injunctive relief to prevent the immediate closure of Melrose without notice and a hearing;

Seventh Cause of Action:  declaratory and injunctive relief to prevent closure of Melrose by enforcing the Interim Control Ordinance, the Grandfather Prior Registrant Ordinance, and the Grandfather/Lottery Ordinance;

8

Eighth Cause of Action: declaratory and injunctive relief to prevent immediate closure by refusing to accept notice of intention to register under the Grandfather Prior Registrant Ordinance and Grandfather/Lottery Ordinance;

Ninth Cause of Action: declaratory and injunctive relief regarding deprivation of equal protection and due process;

Tenth Cause of Action: violation of Civil Code section 52.1 (interference with constitutional or statutory rights by threat, intimidation or coercion) by the May 2010 Shutdown Letter, the January 2011 Landlord Letter, and the July 2010 unreasonable search, seizure, and false arrest;

Eleventh Cause of Action: declaratory relief under Civil Code section 52.1;

Twelfth Cause of Action: injunctive relief under Civil Code section 52.1;

First Thirteenth Cause of Action: injunctive relief in a taxpayer action for use of taxpayer dollars to violate state law;[6]

Second Thirteenth Cause of Action: injunctive relief in a taxpayer action for use of taxpayer dollars to investigate dispensaries and, once the City learned it could not shut them down, by attempting to force their landlords to evict them or inviting the federal government to shut them down; and

Fourteenth Cause of Action: declaratory relief on whether the Grandfather Prior Registrant Ordinance was enforceable.

6. *Demurrer and Dismissal*

Because the substantive arguments on appeal bear little relation to the causes of action as alleged in the complaint, we summarize the basis for the City's demurrer. Suffice it to say that the City argued appellants' challenges to all ordinances prior to

---

[6] This cause of action is somewhat incomprehensible. It refers to cross-complainants, although there is no cross-complaint. It alleges both that Melrose had a "tax permit which is equivalent to a business license" from the City and the "denial of the aforementioned business license . . . ." We also observe there were two causes of action entitled "Thirteenth Cause of Action."

Prop D were mooted by Prop D, and meritless due to intervening court authority. The individual respondents relied on governmental immunities.

Appellants opposed the demurrer, arguing that although the prior ordinances had been superseded, they "live[] on." Appellants asserted that they faced a legitimate threat of closure under Prop D, and so could pursue injunctive relief. They sought declaratory relief against "whatever incarnation of the [City] Ordinance exists at the time of trial." Appellants disagreed with the individual respondents' assertions of governmental immunities.

The court issued a tentative ruling, which is not in the record but apparently was in respondents' favor. At the hearing on the demurrer, appellants' counsel sought leave to amend, and argued solely for permission to amend the tenth cause of action, asserting violation of rights under Civil Code section 52.1. Appellants' counsel represented that he had evidence of threats, coercion and intimidation in the conduct of the search beyond what was alleged in the complaint – specifically, evidence that the door was broken, officers pointed guns at individuals present, and asked questions despite requests for counsel. The court agreed that leave to amend was appropriate. The court noted that the cause of action appellants were attempting to allege required allegations of threats and intimidation beyond that which is normally required in ordinary police action. The court granted leave to amend, but only with respect to those officers present at the scene of the search. In all other respects, the demurrer was sustained without leave to amend.

Despite having been granted leave to amend the Civil Code section 52.1 cause of action at appellants' specific request, appellants did not amend their complaint in the time allotted.[7] Judgment of dismissal was entered. Appellants filed a timely notice of appeal.[8]

---

[7] On appeal, appellants argue they suffered "substantial prejudice" by being given leave to amend only the tenth cause of action because it forced them to choose between amending as to the officers and losing all other causes of action "as to which denial of leave to amend was reversible error" or decline to amend and "risk dismissal against the officers, as to whom sufficient facts were already pleaded . . . ." The anomaly of being

10

## DISCUSSION

On appeal, appellants seek to recast all of their causes of action – with the exception of the tenth cause of action under Civil Code section 52.1 – as challenges to Prop D. They seek leave to amend to assert causes of action based on the process by which Prop D was adopted, raising arguments that we have rejected in the companion case, *Safe Life*. As to the cause of action under Civil Code section 52.1, appellants' failure to amend after having been granted leave to do so leaves them with two arguments: that the cause of action was sufficiently pleaded in the operative complaint, and that the leave to amend granted was too narrow. Because we have already addressed Prop D in *Safe Life,* we first summarily consider, and reject, appellants' challenges to Prop D. We then turn to the heart of the matter -- Civil Code section 52.1.

Preliminarily, we observe the deficiencies in appellants' briefing. California Rules of Court, rule 8.204(2)(C) mandates that an appellant's opening brief "[p]rovide a summary of the significant facts limited to matters in the record." Appellants' brief provides no such summary. The brief also argues that sufficient facts were alleged supporting its tenth cause of action, but does not support these references by record citations, which is also required. (Cal. Rules of Court, rule 8.204(a)(1)(C).) Several of appellants' arguments are only cursorily made. "It is the responsibility of the appellant[s], here to support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.]" (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).)

---

prejudiced by the granting of one's own request aside, we see no prejudice; as we explain, the court's ruling was entirely correct.

**8** On appeal, the City filed a request for judicial notice of numerous City ordinances, Charter provisions, municipal code provisions, and other legislative materials. Appellants filed no opposition. We grant the request.

11

1.      *Appellants' Challenges to Prop D (All Causes of Action except the Tenth)*

Appellants' principal Prop D argument is that the ordinance was adopted in violation of Government Code section 68504.  We rejected this argument in *Safe Life*, at pages 13-17.  Appellants also argue that the May 2010 Shutdown Letter was an improper order to close.  In our earlier appeal involving many of these issues, we concluded that the May 2010 Shutdown Letter was merely an advisory letter, not part of the enforcement procedure.  (*420 Caregivers, LLC v. City of Los Angeles* (2012) 219 Cal.App.4th 1316, 1343 (*420 Caregivers*).)[9]  Allegations regarding the January 2011 Landlord Letter are barred by the same analysis.

Appellants pursue an additional argument that their Business Tax Registration Certificate established their right to operate a dispensary.  The argument is without merit.  The Municipal Code provides that no registration certificate shall be construed as authorizing the registrant to conduct or continue any illegal business or a legal business in an illegal manner.  (L.A. Mun. Code, § 21.01.)  Indeed, pursuant to L.A. Municipal Code section 21.08, subdivision (b), every Business Tax Registration Certificate is emblazoned with a warning that it "DOES NOT CONSTITUTE A PERMIT."  As such, the certificate does not establish any right in appellants to operate a dispensary in violation of the City's medical marijuana ordinances.

Appellants also continue pursuit of their causes of action to prevent immediate closure of their dispensary without due process of law; appellants closed their dispensary three years ago because they lost their lease.  No injunctive relief could be granted and those causes of action are therefore moot.  "A change in circumstances, rendering injunctive relief moot or unnecessary, justifies the denial of an injunction."  (*Donald v. Cafe Royale, Inc.* (1990) 218 Cal.App.3d 168, 184.)  A matter is considered moot if, as a result of changed circumstances, its determination by declaratory relief will no longer

---

[9]      Appellants' citation of the trial court's order *which we reversed* in *420 Caregivers* is disingenuous at best.

12

significantly affect the legal relations of the parties. (*Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 364.)

In their reply brief, appellants argue for the first time that Prop D cannot be enforced criminally when the City Attorney treats it as a strict liability offense. Appellants argue that Prop D was written to deprive an innocent potential defendant, such as a landlord, of the defense of mistake. This hypothetical scenario will be adjudicated if and when the City Attorney seeks to pursue Prop D criminal charges. As to notice, the May 2010 Shutdown Letter – which appellants concededly received long before any of them were arrested – alerted them to the then-existing Grandfather Prior Registrant Ordinance and the possibility of enforcement if they continued to operate in violation of the law.

2.      *The Tenth Cause of Action For Violation of Civil Code Section 52.1*

Once we separate the issues already decided by our other appeals, we have left for adjudication only those of appellants' arguments concerning whether the trial court erred in sustaining the demurrer to the tenth cause of action and by only allowing amendment to allege additional facts establishing that the on-scene arresting officers engaged in threatening, intimidating, or coercive conduct over and above that inherent in the arrest itself.

A.      *Standard of Review*

" 'It is well established that the allegations of a complaint must be liberally construed with a view to attaining substantial justice between the parties [citations]. We have also held that, "in governmental tort cases 'the rule is liability, immunity is the exception' . . . . Unless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail." [Citation.]' Because the present case involves claims against public employees and is controlled by the California Tort Claims Act, the following rules apply: 'However, because under the Tort Claims Act all governmental tort liability is based on

13

statute, the general rule that statutory causes of action must be pleaded with particularity is applicable. Thus "to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity." [Citations.]' [Citation.] It is a plaintiff's responsibility to plead ' "facts sufficient to show [his or her] cause of action lies outside the breadth of any applicable statutory immunity." [Citation.]' [Citation.]" (*Gates v. Superior Court* (1995) 32 Cal.App.4th 481, 493-494.)

### B. Civil Code Section 52.1

Civil Code section 52.1 provides injunctive and monetary remedies in situations where "a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, . . ." By its plain language, the statute's provisions "are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 843.)

Appellants alleged respondents' conduct interfered with several different constitutional and statutory rights: (1) their rights to be free from unreasonable searches and seizures; (2) their right to be free from false arrest; and (3) their alleged right to operate a dispensary free from criminal prosecution. As we discussed in *Safe Life*, the last "right" does not exist -- there is no constitutional or statutory right to possess or collectively cultivate medical marijuana. (*Safe Life,* at pp. 21-22.) Thus, appellants cannot rely on violations of this claimed right to support their Civil Code section 52.1 cause of action whether based on the enactment or enforcement of Prop D, the May 2010 Shutdown Letter and the January 2011 Landlord Letter, or the police conduct at the Melrose location. We therefore consider appellants' Civil Code section 52.1 cause of action to the extent it is based on appellants' rights to be free from unreasonable searches and seizures, and false arrest. The conduct on which this cause of action is based is the

14

purchase of marijuana at Melrose by the two undercover officers, the subsequent search pursuant to warrant, and the arrests in conjunction with that search.

The City and the individual respondents primarily defend against the Civil Code section 52.1 claim by arguing that appellants have for the most part alleged malicious prosecution, against which respondents have statutory immunity. Respondents are only partially correct. The cause of action has elements of both malicious prosecution and false arrest. We discuss each in turn.

### C.     Malicious Prosecution:  Respondents are Statutorily Immune

Government Code section 821.6 provides a broad immunity "for injury caused by [a public employee] instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  The statute "is given an 'expansive interpretation' in order to best further the rationale of the immunity, that is, to allow the free exercise of the prosecutor's discretion and to protect public officers from harassment in the performance of their duties. [Citations.]" (*Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1292.)  It extends not merely to the institution of proceedings, but to "[a]cts taken during an investigation prior to the institution of a judicial proceeding . . . ."  (*County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 229.)  It extends not only to prosecutors, but police officers as well. (*Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 756 (*Asgari*).)  It applies even if the officers involved abused their authority and if charges are never filed. (*County of Los Angeles v. Superior Court,* at p. 229.)  If the public employee is immune, the public entity by which he or she was employed is likewise immune, unless otherwise provided by statute.  (Gov. Code, § 815.2, subd. (b).)

Appellants' tenth cause of action alleged that the raid on Melrose was the result of individuals in the City Attorney's office seeking police assistance in order to gain evidence that could be used to the respondents' advantage in an upcoming hearing in this case. But these allegations, if true, are those of malicious prosecution. The purportedly malicious attempt to investigate Melrose, obtain a warrant, search the premises and seize

15

marijuana as part of a scheme to gain an advantage in a civil action constitutes malicious prosecution and is therefore subject to immunity. To the extent appellants' Civil Code section 52.1 cause of action is based on this conduct, all of the conduct is immune under Government Code section 821.6. The demurrer was properly sustained without leave to amend to this extent.

### D. False Arrest: No Immunity but No Cause of Action Properly Pled

Whether governmental immunity also extends to the act of arresting the individual appellants as part of the execution of the search warrant requires further analysis. Immunity for malicious prosecution does not extend to claims of false arrest. (*Asgari, supra,* 15 Cal.4th at pp. 753-753 & fns. 3-6.) But the line between malicious prosecution and false arrest is not always clear. (*Harden v. San Francisco Bay Area Rapid Transit Dist.* (1989) 215 Cal.App.3d 7, 16-17.) The difference often turns on whether proper formal process was used. Malicious prosecution is the act of initiating or procuring the arrest and prosecution of another under lawful means, but out of malicious motives and without probable cause. (*Asgari,* at p. 757.) If, for example, a valid arrest warrant was obtained for purely malicious reasons, and the person is arrested, the wrong is malicious prosecution, not false arrest. (*Collins v. City and County of San Francisco* (1975) 50 Cal.App.3d 671, 676-677.) In contrast, a false arrest occurs when a police officer knowingly and recklessly gives false information to other officers with the intent to induce an arrest. (*Harden* at p. 15.) Appellants' complaint alleges that respondents unlawfully arrested Ahmed and Manuel Kebabjian without a warrant and without probable cause. Based on this allegation, it appears that appellants have purported to state a cause of action for false arrest that is not subject to governmental immunity. We consider appellants' Civil Code Section 52.1 claim in that light.

Civil Code section 52.1 does not provide a remedy for violation of constitutional or statutory rights alone; it provides a remedy when those rights are violated by threat, intimidation, or coercion. When a plaintiff bases a cause of action for violation of Civil Code section 52.1 on an alleged false arrest, the question becomes whether the plaintiff

16

must allege threats, intimidation or coercion *over and above* the threats, intimidation or coercion *inherent* in a false arrest itself. California case law has concluded that threats, intimidation or coercion beyond that inherent in the false arrest itself are necessary for a cause of action under Civil Code section 52.1. (*Allen, supra,* 234 Cal.App.4th at p. 69; *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959; see also *Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 978.) While some federal district courts have disagreed, (*e.g., D.V. v. City of Sunnyvale* (N.D. Cal. 2014) 65 F.Supp.3d 782, 789), the Ninth Circuit has recently concluded that threats, intimidation or coercion beyond that inherent in the false arrest are necessary to state a claim under Civil Code section 52.1. (*Lyall v. City of Los Angeles* (9th Cir. 2015) 807 F.3d 1178, 1196.)

The trial court granted leave to amend on the basis that appellants had not *pleaded* threats, intimidation or coercion beyond that inherent in a false arrest itself, although appellants' counsel had represented at the hearing that he could amend the complaint to do so. On appeal, appellants argue: (1) that they had, in fact, pleaded additional threats, intimidation and coercion, such that amendment was unnecessary; and (2) the court erred in limiting leave to amend to the officers who were on scene at the time of the search. We disagree.

As to whether appellants' complaint sufficiently pleaded threats, intimidation and coercion over and above that inherent in a false arrest, appellants point to introductory paragraphs of the complaint in which they mention some respondents were liable for "entry destruction." At one point it is alleged that respondents "searched and destroyed property" at the premises. The tenth cause of action itself states that appellants were "subjected to handcuffing, fingerprinting, booking, strip searching, visual inspection of body cavities, and the creation of an arrest record." These allegations do not meet the "pleaded with particularity" standard necessary in this context. The allegation of "entry destruction," for example, does not allege a use of force beyond that necessary to execute a search warrant. (Pen. Code, § 1531 [police may break a door of a house to execute a search warrant if after notice of authority and purpose, they are denied admittance].) That appellants were fingerprinted and strip searched similarly does not allege anything

17

beyond what is permissible incident to an arrest. (Pen. Code, § 4030, subd. (f) [pre-arraignment detainees arrested for misdemeanor controlled substance offenses may be strip searched].) While appellants allege they suffered damages in certain amounts, there is no specific description of any threats, intimidation, or coercion in the complaint over and above that incident to the execution of a search warrant and an arrest. The trial court was therefore correct to sustain the demurrer, and acted within its discretion to grant leave to amend to add such allegations.[10]

Nor did the trial court err by restricting leave to amend to the officers who were on the scene at the time of the search and arrest. Appellants argue that several of the individual respondents – who were not on scene – took part in a conspiracy to conduct an unreasonable warrantless search, and to use the coercive power of the LAPD to obtain evidence for use in this civil action. This conduct is subject to the malicious prosecution immunity of Government Code section 821.6, and leave to amend was properly denied. More importantly, appellants have not indicated in what manner they could allege that any respondent who was not present at the time of the arrest participated in any acts of threats, intimidation or coercion under Civil Code section 52.1.

On appeal, appellants suggest, for the first time, that the complaint was sufficient because – regardless of Civil Code section 52.1 – it sufficiently alleged a cause of action for false arrest. Appellants make this argument superficially at best, quoting the applicable jury instruction in a footnote, but failing to identify the facts in the operative

---

**10**     Appellants did use Civil Code section 52.1-type language in parts of their complaint; for example "deprivation of rights by coercion in the enforcement of preempted portions of the [Municipal Code]." To the extent that appellants were attempting to allege the enforcement activity was itself coercive, the conclusory allegation is inadequate. (*Allen, supra,* 234 Cal.App.4th at p. 69.) To the extent that appellants were attempting to imply coercion by the purported fact that the law being enforced was preempted, state law does not preempt local regulation of medical marijuana. (*City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.* (2013) 56 Cal.4th 729, 759.)

18

complaint that purportedly satisfy each element of the cause of action.  We therefore consider the argument waived.[11]

## *DISPOSITION*

The judgment of dismissal is affirmed.  Respondents are to recover their costs on appeal.

                                        RUBIN, J.

WE CONCUR:


        BIGELOW, P. J.


        FLIER, J.

---

[11]     The same is true with appellants' argument that they satisfactorily alleged the elements of a cause of action for conspiracy to violate privacy rights.