Filed 9/18/20  Jacobs v. Swalwell CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| HARVEY BARRY JACOBS, Plaintiff and Appellant, v. CHRISTOPHER SWALWELL, Defendant and Respondent. | D075535 (Super. Ct. No. 37-2018-00022730- CU-PN-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Harvey Barry Jacobs, in pro. per., for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel, Jeffrey P. Michalowski and Ronald Lenert, Deputy County Counsel, for Defendant and Respondent.

In March 2000, plaintiff and appellant Harvey Jacobs was sentenced to 15 years to life in prison for fatally strangling his wife, Nadine Jacobs (Wife). Over 18 years later, Jacobs sued the deputy medical examiner who conducted Wife's autopsy, defendant and respondent Christopher Swalwell.  Jacobs alleged Swalwell's professional negligence in conducting the autopsy caused

Jacobs to be wrongfully convicted of murder and imprisoned for more than 17 years. Swalwell demurred on grounds that (1) Jacobs failed to comply with the claim-presentation requirements of the Government Claims Act (Gov. Code, § 810 et seq.; hereafter, the Act);[1] (2) Swalwell was immune from liability under the Act; and (3) Jacobs's criminal conviction collaterally estopped him from contesting in a civil lawsuit Wife's cause of death. The trial court sustained the demurrer without leave to amend on all three grounds, and entered judgment in Swalwell's favor. On appeal, Jacobs challenges the three grounds on which the trial court relied. For reasons we will explain, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2000, Jacobs was convicted of the second degree murder of Wife. In March 2000, he was sentenced to prison for 15 years to life, with the possibility of parole. We affirmed Jacobs's conviction in a nonpublished opinion. (*People v. Jacobs* (Sept. 4, 2001, D035406) [nonpub. opn.] (*Jacobs I*).)[2] Jacobs served 17 years in prison before being granted parole in 2017.

---

[1]  Undesignated statutory references are to the Government Code.

[2]  On our own motion, we take judicial notice of our prior nonpublished opinion in *Jacobs I*. (Evid. Code, § 452, subd. (d); *In re W.R.* (2018) 22 Cal.App.5th 284, 286, fn. 2; Cal. Rules of Court, rule 8.1115(b)(1) ["An unpublished opinion may be cited or relied on [¶] . . .[w]hen the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel."].)

On May 8, 2018, Jacobs filed a lawsuit against Swalwell and several other defendants.[3] Jacobs checked boxes on his Judicial Council form complaint indicating he was "required to comply" and had "complied with the applicable claims statutes," but he did not elaborate on how he had done so.

The complaint asserted a single cause of action for "Professional Negligence" arising from the manner in which Swalwell performed an autopsy on Wife in 1999. Jacobs alleged the autopsy report contained "strong evidence" indicating Swalwell performed "a standard autopsy," even though "an authoritative text on" conducting autopsies recommends using different techniques when strangulation is suspected. Jacobs alleged Swalwell "committed professional negligence by failing to take normal precautions when he suspected strangulation in order to avoid the manufacture of evidence resembling strangulation which were caused by the inappropriate autopsy technique being utilized." Jacobs further alleged that "[a]s a result of th[is] professional negligence . . . , [he] was made to suffer loss of his liberty for more than seventeen (17) years," thereby implying he was wrongfully convicted of, and imprisoned for, Wife's murder. Jacobs sought $15 million in compensatory damages, and unspecified punitive damages.

Swalwell demurred to the complaint on two grounds. First, he asserted Jacobs failed to comply with the Act's claim-presentation requirements, which generally require that claims for money damages against public employees first be presented to the appropriate public entity within six months or one year of the claim's accrual. (§§ 905, 911.2, 915.) Swalwell

---

[3]    Jacobs's lawsuit also named Swalwell's employer (San Diego County Office of Medical Examiner (hereafter, County)), the medical examiner, and several other deputy medical examiners. Only Jacobs's claim against Swalwell is currently before us.

asserted that County's records showed Jacobs never presented such a claim, "and it is far too late to do so."

Second, Swalwell maintained the Act immunized him from liability. Among other authorities, he cited *Stearns v. County of Los Angeles* (1969) 275 Cal.App.2d 134 (*Stearns*), which held that the Act immunizes coroners from liability for negligently performed autopsies. (*Id.* at p. 137.)

Jacobs opposed the demurrer. He maintained he had complied with the Act by "fil[ing] a claim with the Government Codeent [*sic*] Claims Department" on October 5, 2017. He insisted the claim was timely either because it was based on a "continuous injury" that ended only when he was released from prison, or because the filing deadline was tolled by his "disability" of imprisonment. He did not cite any authority to support either claim.

Jacobs also argued Swalwell was not immune because (among other reasons) performing an autopsy does not fall within the scope of investigative activity immunized by the Act.

For reasons not made clear in the appellate record, Jacobs filed a first amended complaint substantively identical to his original complaint, except that he increased his prayer for damages to $32 million (a $17 million increase for lost income of $1 million per year for each of the 17 years he was incarcerated).

Swalwell demurred to the first amended complaint on the same grounds as before, but he added one additional ground—that "[t]he doctrine of collateral estoppel bars this action" because Jacobs's criminal conviction conclusively established Jacobs murdered Wife.

Jacobs opposed the new demurrer on virtually identical grounds as the original. Indeed, it appears he merely refiled his original opposition.

4

Consequently, Jacobs did not address Swalwell's new collateral estoppel argument.

After a hearing, the trial court sustained Swalwell's demurrer on all the grounds he asserted. First, the court found the first amended complaint did "not include any allegations regarding whether . . . a claim was filed" under the Act. Second, citing *Stearns*, *supra*, 275 Cal.App.2d 134, the court found that the Act immunized Swalwell against Jacobs's claim for professional negligence. Finally, the court found that Jacobs's "claim is collaterally estopped . . . because he was afforded a full opportunity to litigate his case in criminal court and was convicted of a felony as a result." The court denied leave to amend because Jacobs "alleged wrongdoing dating back to 1999," and "the Court questions how possible, if at all, it is for [Jacobs] to plead a cause of action, which survives another legal challenge."

The trial court entered a judgment of dismissal in favor of Swalwell. Jacobs appeals.

## DISCUSSION

### I. *Demurrer Principles*

"A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense." (*Redfearn v. Trader Joe's Co.* (2018) 20 Cal.App.5th 989, 996; see *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.) "We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken." (*Redfearn*, at p. 996; see *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) "However, we are not required to accept the truth of

5

the legal conclusions pleaded in the complaint." (*Redfearn*, at p. 996; see *Zelig*, at p. 1126.) "We give the complaint a reasonable interpretation, reading it as a whole and its parts in context." (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.)

"We review the trial court's result for error, not its legal reasoning. [Citation.] If a proper ground exists for sustaining the demurrer, we affirm 'even if the trial court relied on an improper ground, whether or not the defendants asserted the proper ground in the trial court.' [Citation.] On the other hand, '[i]f the complaint shows entitlement to relief under any possible legal theory, the trial court erred in dismissing the action.' [Citation.] We also may consider new legal theories presented on appeal." (*Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1365 (*Fonteno*).)

"In order to prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error. Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752.)

"[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not

satisfy this burden." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 (*Rakestraw*).) "Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Id.* at p. 44.)

## II. *Collateral Estoppel Bars Jacobs's Claim*

Swalwell asserted collateral estoppel in his demurrer to the first amended complaint, yet Jacobs did not address the issue in his opposition. The trial court sustained Swalwell's demurrer on collateral estoppel grounds. Still, Jacobs did not address the issue in his opening brief on appeal. It was only in his reply brief on appeal that Jacobs finally argued he is not collaterally estopped from asserting his claim. Unless good cause is shown for failing to raise it sooner, " 'obvious reasons of fairness' " to the respondent dictate that we not consider an argument raised for the first time in a reply brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764; *Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1004, 1022 [applying rule to appeal from judgment of dismissal following demurrer]; *Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 855 [same].) Jacobs's only explanation for not addressing collateral estoppel sooner is that his opening brief charged the trial court with "committ[ing] plain error." This was insufficient to inform Swalwell before he filed his respondent's brief that Jacobs was contesting the trial court's collateral estoppel ruling. Accordingly, we will not consider Jacobs's belated response regarding collateral estoppel, and he has not met his burden of establishing the trial court erred in sustaining Swalwell's demurrer on this ground.

Even if we were to consider Jacobs's belated arguments, we would find them unpersuasive for several reasons.  First, even in his reply brief, Jacobs failed to address the legal authority Swalwell cited in his respondent's brief, *Higginbotham v. King* (1997) 54 Cal.App.4th 1040 (*Higginbotham*).  The *Higginbotham* plaintiff—"a prominent eye surgeon" arrested for cultivating marijuana—sued one of the arresting officers for making allegedly false statements to a local newspaper that "created an immediate impression of guilt for the crime . . . ."  (*Id.* at pp. 1042-1043.)  The trial court granted summary judgment for the defense on the basis the plaintiff's subsequent criminal conviction collaterally estopped his civil claim.  (*Id.* at p. 1043.)  The Court of Appeal affirmed, explaining:

> "The doctrine of collateral estoppel bars appellant's claim that the pretrial publicity denied him a fair trial.  Appellant 'was afforded a full opportunity to litigate the issue of his guilt with all the safeguards afforded the criminal defendant, and since he was charged with felonies punishable in the state prison [citation], he had every motive to make as vigorous and effective a defense as possible.  Under these circumstances, we hold that any issue necessarily decided in a prior criminal proceeding is conclusively determined as to the parties if it is involved in a subsequent civil action.' "  (*Higginbotham*, *supra*, 54 Cal.App.4th at p. 1044.)

Like the *Higginbotham* appellant, Jacobs "had every motive to make as vigorous and effective a defense as possible" in his criminal case.  (*Higginbotham*, *supra*, 54 Cal.App.4th at p. 1044.)  Indeed, as our prior opinion in *Jacobs I* makes clear, Wife's cause of death was vigorously

litigated in Jacobs's criminal trial. (See *Jacobs I*, D035406;[4] see also *Jacobs v. Cate* (9th Cir. 2009) 313 Fed.Appx. 42, 45-46 (rejecting Jacobs's habeas corpus claim that his defense counsel performed ineffectively by "fail[ing] to use certain articles and to challenge certain aspects of Dr. Swalwell's autopsy methodology"].)[5] Collateral estoppel precludes Jacobs from now relitigating under the preponderance-of-the-evidence standard the very same issue (Wife's cause of death) a jury previously rejected under the higher beyond-a-reasonable-doubt standard.

Second, Jacobs fails to adequately explain how *Brady v. Maryland* (1963) 373 U.S. 83 and other cases regarding criminal defendants' procedural rights in *criminal cases* have any bearing on the preclusive effect of a criminal judgment in subsequent *civil cases*.

Finally, Jacobs misses the mark when he argues "the question of liability and direct injury to [Jacobs] by [Swalwell] is a claim never before presented." This is not the issue Jacobs is collaterally estopped from relitigating—Wife's cause of death is. As the record and judicially noticeable materials discussed above show, that issue was actually litigated in Jacobs's criminal case.

Thus, even if Jacobs had timely addressed collateral estoppel, we would find his contentions unpersuasive.

---

4      For example, at pages 4, 10, and 23 through 26 of our opinion in *Jacobs I*, we discuss some of the competing expert testimony regarding Wife's cause of death.

5      We deny Swalwell's request that we take judicial notice of Jacobs's federal habeas corpus petition. It is unnecessary to our disposition of this appeal.

III. *Jacobs's Claim is Barred by His Untimely Presentation of it Under the Act*

The trial court sustained Swalwell's demurrer on the additional basis Jacobs's first amended complaint did "not include any allegations regarding whether . . . a claim was filed" under the Act.  Although this specific finding is technically incorrect—Jacobs checked boxes alleging he was "required to comply" and had "complied with the applicable claims statutes"[6]—Jacobs's admissions in his opposition to the demurrer conclusively establish he failed to timely present a claim.  Thus, the trial court properly sustained Swalwell's demurrer.  (See *Fonteno*, *supra*,  228 Cal.App.4th at p. 1365 ["If a proper ground exists for sustaining the demurrer, we affirm 'even if the trial court relied on an improper ground, whether or not the defendants asserted the proper ground in the trial court.' "].)[7]

Subject to exceptions not relevant here, "[s]uits for money or damages filed against a public entity are regulated by [the Act]." (*DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 989; see § 905.)  The Act likewise applies to claims against "a public employee . . . for injury resulting from an act or omission in the scope of his employment as a public employee . . . ." (§ 950.2.)

"Claims for personal injury and property damage must be presented within six months after accrual; all other claims must be presented within a

---

6    "A plaintiff may allege compliance with the claims requirements by including a general allegation that he or she timely complied with the claims statute." (*Gong v. City of Rosemead* (2014) 226 Cal.App.4th 363, 374.)

7    Because we conclude Jacobs failed to timely present a claim under the Act, we need not address the contested issue of whether he presented his claim to the proper public entity.  (See *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 991 (*DiCampli-Mintz*) ["The claimant bears the burden of ensuring that the claim is presented to the appropriate public entity."].)

year." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738 (*City of Stockton*); see § 911.2.) " '[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected . . . .' " (*City of Stockton*, at p. 738, quoting § 945.4.) "The legislature's intent to require the presentation of claims *before* suit is filed could not be clearer." (*City of Stockton*, at p. 746.) Thus, " 'failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.' " (*Id.* at p. 738.)

Jacobs alleged in his first amended complaint that Swalwell performed the challenged autopsy in 1999, and the record shows Jacobs was convicted of Wife's murder and sentenced to prison in early 2000. Thus, Jacobs's claim accrued no later than 2000, and the Act required him to present a pre-lawsuit claim to County no later than 2001.[8] Yet, Jacobs admitted in his opposition to Swalwell's demurrer that he first presented his claim in October 2017— *16 years too late*. Accordingly, the Act precluded Jacob from bringing this lawsuit, and the trial court properly sustained Swalwell's demurrer.

As he did in the trial court, Jacobs argues on appeal that his deadline for presenting his claim was tolled by his disability of imprisonment.[9]

---

[8]    We need not determine whether Jacobs's claim is subject to the six-month or one-year presentation deadline because his claim is obviously untimely under either.

[9]    Jacobs does not raise on appeal the continuing-injury theory he advanced in the trial court. We therefore do not consider it. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["It is the responsibility of the appellant, here plaintiffs, to support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with

11

Specifically, he cites Code of Civil Procedure section 352.1, which provides for limited tolling when a plaintiff's claim accrues while he or she is in prison.[10] Jacobs's reliance on this statute is misplaced for several reasons.

First, by its own terms, Code of Civil Procedure section 352.1 "does not apply to an action against a public entity or public employee upon a cause of action for which a claim is required to be presented in accordance with [the Act]." (Code Civ. Proc., § 352.1, subd. (b); see *Moore v. Twomey* (2004) 120 Cal.App.4th 910, 914 ["The statute of limitations for commencing a government tort claim action is not tolled by virtue of a plaintiff's imprisonment."]; *Rose v. Hudson* (2007) 153 Cal.App.4th 641, 656 [Code Civ. Proc. § 352.1, subd. (b) "stat[es] the statute does not apply to actions for which a governmental claim is required"].) As Jacobs acknowledges, his claim is governed by the Act. Thus, Code of Civil Procedure section 352.1, subdivision (a)'s tolling provision "does not apply." (Code Civ. Proc., § 352.1, subd. (b).)

Second, even if Jacobs were entitled to tolling under Code of Civil Procedure section 352.1, the statute expressly provides that any such tolling is "*not to exceed two years*." (Code Civ. Proc., § 352.1, subd. (a), italics added.) The cases Jacobs cites to support the proposition that tolling applies for the entire period of imprisonment are inapposite because they were decided

---

citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration."].)

[10] Code of Civil Procedure section 352.1, subdivision (a) states: "If a person entitled to bring an action . . . is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years."

under a predecessor statute that *did not include the two-year limit.* (See *Carlson v. Blatt* (2001) 87 Cal.App.4th 646, 649 ["Effective January 1, 1995, the Legislature amended [Code of Civil Procedure] section 352 to delete the tolling provision and added [Code Civ. Proc.] section 352.1 to limit the tolling period to two years."]; *Ellis v. City of San Diego* (9th Cir. 1999) 176 F.3d 1183, 1189 [although prior law "provided for unlimited tolling during incarceration," the "law was subsequently changed effective January 1, 1995, to limit the period of tolling"]; Stats. 1994, ch. 1083 ["Existing law [provides that] periods of limitation are tolled during the time that the person entitled to bring [an] action is imprisoned on a criminal charge for a term less than life. [¶] *This bill would limit the tolling provision for prisoners to 2 years*," italics added].)[11] Thus, even with the limited tolling available under Code of Civil Procedure section 352.1, Jacobs's claim would still be *at least 14 years too late.*

Because Jacobs failed to timely present his claim under the Act, he is precluded from bringing this lawsuit. Accordingly, the trial court properly sustained Swalwell's demurrer on the basis Jacobs failed to comply with the Act.

---

[11] The following cases cited by Jacobs were decided under the predecessor to Code of Civil Procedures section 352.1 (Code Civ. Proc., former § 352): *Martinez v. Gomez* (9th Cir.1998) 137 F.3d 1124, 1125-1126; *Grasso v. McDonough Power Equipment, Inc.* (1968) 264 Cal.App.2d 597, 598; *Meraviglia v. Bovee* (1931) 113 Cal.App. 752, 753; and *Leeper v. Beltrami* (1959) 53 Cal.2d 195, 208.

The only case Jacobs cited that was decided under Code of Civil Procedure section 352.1 actually acknowledges the statute "does not apply to negligence claims against public entities or public employees." (*Pimentel v. County of Fresno* (E.D.Cal. Feb. 1, 2011, No. 1:10-cv-01736-OWW-DLB) 2011 U.S. Dist.LEXIS 10117, at *20-21 [deciding the case under federal law].)

IV. *The Act Immunizes Swalwell Against Jacobs's Claim*

Jacobs contends the trial court erred by sustaining the demurrer on the additional ground that the Act immunizes Swalwell against Jacobs's claim. This contention lacks merit.

Section 821.6 provides, "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." "Section 821.6 is not limited to the act of filing a criminal complaint. Instead, it also extends to actions taken in preparation for formal proceedings. Because investigation is 'an essential step' toward the institution of formal proceedings, it 'is also cloaked with immunity.' " (*Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1209-1210.)

On remarkably similar facts, the court in *Stearns*, *supra*, 275 Cal.App.2d 134 held that section 821.6 immunized a county coroner against the plaintiff's claim that a negligently performed autopsy led to the plaintiff being wrongfully charged with his wife's murder. (*Stearns*, at p. 136.) The court reasoned the coroner's performance of the autopsy " 'can be considered as "instituting or prosecuting" a "judicial proceeding," in that [his] behavior provide[d] the first steps towards plaintiff's arrest and incarceration and clearly [was a] step[] involved in the "prosecution" of that proceeding.' " (*Id.* at p. 137.)

We find the *Stearns* court's reasoning persuasive. Accordingly, because Jacobs alleges Swalwell's negligent performance of Wife's autopsy led to Jacobs being wrongfully prosecuted for, and convicted of, Wife's murder, section 821.6 immunizes Swalwell against Jacobs's claim.

Jacobs argues *Stearns* does not apply here because the *Stearns* plaintiff sued for negligence and malicious prosecution, whereas Jacobs claims he

14

sued Swalwell for "false imprisonment," which is expressly excepted from immunity by section 820.4.[12] Jacobs's argument fails for several reasons.

First, like the plaintiff in *Stearns*, Jacobs *did* sue Swalwell for negligence. Indeed, Jacobs's lone cause of action in the first amended complaint is denominated "Professional Negligence," and the phrase is repeated no fewer than seven times throughout the short pleading.

Second, beyond the mere label, the substance of Jacobs's claim is more consistent with the negligence and malicious prosecution immunized by section 826.1 than it is with the false imprisonment excepted by section 820.4. This is borne out by *Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744 (*Asgari*), on which Jacobs heavily relies in attempting to distinguish *Stearns*.

In *Asgari*, the plaintiff sued a police officer for false arrest,[13] seeking damages for the entire seven-month incarceration period from arrest to acquittal. (*Asgari*, *supra*, 15 Cal.4th at pp. 748-749.) After the plaintiff prevailed in his civil case, the California Supreme Court granted review to clarify the boundaries between false arrest/imprisonment and malicious prosecution. (*Id.* at p. 748.) The high court explained that because " '[f]alse arrest or imprisonment and malicious prosecution are mutually inconsistent concepts' " (*id.* at p. 757), and because police officers can be held liable for the

---

12    Section 820.4 states: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. *Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.*" (Italics added.)

13    " ' "[F]alse arrest" and "false imprisonment" are not separate torts. False arrest is but one way of committing a false imprisonment . . . .' " (*Asgari*, *supra*, 15 Cal.4th at p. 752, fn. 3.)

15

former but not the latter (*id.* at p. 752), the natural delineating point between the doctrines is the commencement of legal proceedings (*id.* at p. 748).

Thus, under *Asgari*, a police officer can be held liable for false arrest for making an unlawful arrest (e.g., one without a warrant or probable cause). (*Asgari, supra*, 15 Cal.4th at p. 757.) "But the officer would enjoy absolute immunity if, instead of arresting the suspect, the officer proceeded directly to the prosecutor and maliciously and knowingly provided false information that led to the filing of criminal charges. Such conduct would constitute malicious prosecution, and the officer would enjoy absolute immunity from liability under section 821.6." (*Id.* at p. 759.) "A police officer also would be immune from liability if the officer lawfully arrested a suspect, but thereafter maliciously and knowingly provided the prosecutor with false information that led to the filing of criminal charges against the suspect." (*Ibid.*) In essence, false-arrest liability arises from participation in the arrest, whereas malicious-prosecution immunity arises from participation in the subsequent criminal prosecution.

The gravamen of Jacobs's claim against Swalwell is not false arrest (for which Swalwell could be held liable), but malicious prosecution (from which Swalwell is immune). That is, Jacobs does not allege that his *arrest* was unlawful or that Swalwell participated in it in any manner. Instead, Jacobs complains about Swalwell's participation in Jacobs's subsequent criminal prosecution. For example, in his appellant's reply brief, Jacobs describes his claim against Swalwell as "stemming from . . . Swalwell manufacturing evidence of strangulation" and "proffer[ing] testimony at the trial . . . affirming or validating the false evidence." Jacobs further asserts "the prosecutor's decision [to pursue Jacobs] was based largely, if not exclusively, on the false evidence created by [Swalwell.]" Stated differently, Jacobs

16

maintains "the proximate cause of [his] false imprisonment . . . was the creation and presentation of the false evidence by [Swalwell]." This alleged conduct constitutes malicious prosecution, from which Swalwell is immune under section 826.1. (See *Asgari*, *supra*, 15 Cal.4th at p. 759 [officer would be immune for "maliciously and knowingly provid[ing] false information that led to the filing of criminal charges"].)

Accordingly, the trial court properly sustained Swalwell's demurrer on immunity grounds under the Act.

### V. *No Abuse of Discretion in Denying Leave to Amend*

When the trial court sustained Swalwell's demurrer without leave to amend, the court observed that because Jacobs's claim "alleged wrongdoing dating back to 1999, . . . the Court questions how possible, if at all, it is for [Jacobs] to plead a cause of action, which survives another legal challenge." Jacobs has not shown this was an abuse of discretion. For example, he offers no explanation of how he would overcome the fact that his claim was untimely by 14 to 16 years. Nor does he explain how he would overcome Swalwell's statutory immunity under the Act. It is insufficient for Jacobs to merely assert he can state a claim without addressing these specific deficiencies. (*Rakestraw*, *supra*, 81 Cal.App.4th at p. 43 ["[A] plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden."].) Accordingly, the trial court did not abuse its discretion in denying Jacobs leave to amend.

17

## DISPOSITION

The judgment is affirmed.  Jacobs to pay Swalwell's costs on appeal.


HALLER, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.